Karin M. Gunter, Esquire
PA ID No. 79852
Law Office of Karin M. Gunter
85 Old Cedarbrook Road
Wyncote, PA 19095                                          ATTORNEY FOR PLAINTIFF,
(215) 548-9992                                             KIM P. GUNTER

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KIM P. GUNTER, | : | |
| Plaintiff | : | Civil Action No.: |
| | : | |
| v. | : | |
| | : | |
| DREXEL UNIVERSITY, | : | |
| Defendant. | : | |

## COMPLAINT

### Preliminary Statement

Plaintiff Kim P. Gunter is an African American/black female, a qualified individual with a disability and a seasoned privacy and compliance officer with more than twenty years of experience with multiple top tier employers.  After initiating a race/color and gender discrimination lawsuit against Defendant Drexel University ("Drexel"), Plaintiff continued to work as Drexel's Vice President, University Chief Compliance and Privacy Officer until March 7, 2024, when she was placed on administrative leave by Drexel based on allegations of insubordination by her former manager Helen Bowman, Executive Vice President, Treasurer and Chief Operating Officer, *inter alia*.  Bowman alleged Plaintiff refused to "engage in a work-related discussion during a scheduled meeting on February 27, 2024," *inter alia*.  However, Plaintiff attended her scheduled one-on-one meeting, despite Bowman's refusal to honor Plaintiff's request for reasonable accommodations and Bowman's 11th hour change in the nature of the meeting.  During Plaintiff's career at Drexel, her performance evaluations reflected "fully

achieved expected results," and never hinted at any insubordination.  After an alleged third-party investigation, Drexel terminated Plaintiff's employment on May 13, 2024 without interviewing Plaintiff as part of the "investigation" and without providing clarity as to the allegations against her, *inter alia*.

This action is brought by a former employee against her former employer for failure to make reasonable accommodation, disparate treatment and retaliation based on disability in violation of the Americans with Disabilities Act of 1990, *as amended* 42 U.S.C. § 12101, *et seq*. and the Pennsylvania Human Relations Act, *as amended*, 43 P.S. §§ 951-963 ("PHRA"); and for disparate treatment and retaliation based on race/color in violation of Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. § 2000e *et seq*. ("Title VII"), PHRA, and Civil Rights Act of 1866, 42 U.S.C. §1981, *as amended* by the Civil Rights Act of 1991 ("Section 1981").

Plaintiff seeks back pay, front pay, medical expenses, professional treatment, emotional distress, emotional harm, mental anguish, punitive damages, attorney's fees, expert fees, costs and such other relief as this Court deems just and proper.

**Jurisdiction and Venue**

1.   Original jurisdiction over Plaintiff's federal question claims is conferred upon this Court pursuant to 28 U.S.C. § 1331.

2.   Supplemental jurisdiction over Plaintiff's state claims is conferred upon this Court pursuant to 28 U.S.C. § 1367.

3.   Venue lies in this district by 28 U.S.C. § 1391(b) and (c).

4.   Plaintiff exhausted her administrative agency remedies under Title VII, ADA and PHRA.

5.  On or about August 1, 2024, Plaintiff dual filed an administrative agency charge against Drexel with the U.S. Equal Employment Opportunity Commission ("EEOC") and Pennsylvania Human Relations Commission ("PHRC") alleging disability discrimination (failure to make reasonable accommodation, disparate treatment and retaliation) and race discrimination (disparate treatment and retaliation).

6.  On July 10, 2025, the EEOC issued a Notice of Right to Sue letter upon request acknowledging "more than 180 days have passed since the filing of" Plaintiff's charge.

A true and correct copy of the Notice of Right to Sue is attached as Exhibit "A".

## Parties

7.  Plaintiff KIM P. GUNTER ("Plaintiff" or "Gunter") is an adult person and a citizen of the United States.

8.  Defendant DREXEL UNIVERSITY ("Drexel" or "University") is a private, non-profit institution of higher learning with more than 500 employees.

## Underlying Facts

9.  Plaintiff is African American/black and a qualified individual with a disability.

10. Plaintiff began working for Drexel University on July 8, 2019 after a comprehensive nationwide search to fill the position of Vice President and Chief Compliance, Privacy and Internal Audit Officer ("VP CPIA").

11. Plaintiff had over 20 years of experience leading compliance and privacy at other organizations prior to her employment at Defendant Drexel.

12. As VP CPIA, though Plaintiff had administrative and operational oversight of the Office of Compliance, Privacy and Internal Audit ("OCPIA"), she had administrative oversight only of the Internal Audit ("IA") team.

13. Plaintiff was only the second person to hold the position of VP CPIA at Drexel.

14. The first VP CPIA was Edward Longazel ("Longazel"), Caucasian/white, who held the position from on or about February 2015 to December 31, 2017.

15. Since the beginning of her employment with Drexel, Plaintiff received persistent insubordination, aggressions, and harassment by Drexel's then-Chief Audit Executive Billy "Bill" Shea ("Shea"), Caucasian/white, and the IA team leadership under Shea's management.

16. On or about March 2020, Shea complained to the Audit Committee, Board of Trustees ("Audit Committee") during his executive session about Plaintiff's job title and being "under" Plaintiff's administrative management. Plaintiff was not made aware of Shea's actions at that time.

17. Drexel with the consent and cooperation of the then-Chair of the Audit Committee Michael "Mike" Williams ("Williams"), Caucasian/white, and Plaintiff's manager Helen Bowman ("Bowman"), Caucasian/white with approval of the Audit Committee changed Plaintiff's job title to Vice President, University Chief Compliance and Privacy Officer in November 2020.

18. Bowman at all times relevant to this matter was Executive Vice President, Treasurer and Chief Operating Officer of Drexel University.

19. As VP, University Chief Compliance and Privacy Officer, Plaintiff continued to have administrative oversight only of Shea and the IA team.

20. Despite Shea's success in getting Plaintiff's job title changed, he and the IA team continued to be insubordinate, harassing, aggressive and discriminatory towards Plaintiff.

21. Further, despite Bowman noting on several occasions that Shea's and the IA team's behavior toward Plaintiff was disrespectful, unnecessary, antagonistic and stressful for Plaintiff

and stating on at least two occasions including as late as August 2022 that she would give Shea

"final" warnings, Bowman did not follow through on any disciplinary actions against Shea or the

IA team.

22. On or about August 18, 2022, Plaintiff's therapist took her out of work for stress and

subsequently diagnosed Plaintiff with Post Traumatic Stress Disorder (PTSD), anxiety and

depression.

23. Plaintiff remained out of work on family medical leave (FMLA) and short-term

disability until late October 2022.

24. Plaintiff's therapist provided Drexel with paperwork identifying PTSD, anxiety and

depression as Plaintiff's disabilities.

25. Before being taken out of work by her therapist in August 2022, Plaintiff made an

internal complaint with Drexel's Human Resources department against Shea for discrimination,

harassment, hostile work environment, retaliation and insubordination based on race and gender;

requested issuance of a detailed, written final warning against Shea; and requested Shea be

demoted, terminated or reporting reassigned.

26. Drexel did not act upon Complainant's August 2022 complaint/requests.

27. Once Plaintiff returned to work in October 2022, the human resources business

partner, Xavier Johnson ("Johnson"), had not taken any additional steps to further Plaintiff's

discrimination, harassment, hostile work environment, retaliation and insubordination complaint

against Shea.

28. Johnson did not perform a preliminary inquiry, i.e., interview both complainant and

respondent, based on Plaintiff's complaint against Shea, consistent with Drexel's policies and

best business practices.

29. It was not until February 2023 that Drexel issued a complaint against Shea based on Plaintiff's persistent emails pursuing the matter, and in March 2023 it hired a third-party investigator to perform the investigation of Plaintiff's complaints of discrimination and harassment.

30. Shea, Bowman and Williams, amongst others, were interviewed as part of Plaintiff's complaints of discrimination and harassment against Shea investigated by the third party.

31. On or about May 7, 2023, Plaintiff (complainant) and Shea (respondent) received the initial findings of the third-party investigator.  The final report/findings were sent on or about May 25, 2023.

32. On or about May 30, 2023, Plaintiff received an investigative complaint against her made by Shea alleging race and gender discrimination and harassment.  This was the first time ever Plaintiff received any notice or had any knowledge whatsoever of Shea making any complaints of discrimination against her.

33.  Drexel did not perform a preliminary inquiry, i.e., interview complainant and respondent, based on Shea's complaint against Plaintiff (respondent) consistent with Drexel's policies and best business practices.

34. Bowman subsequently acknowledged that Shea never complained to her (Bowman) that Plaintiff discriminated against Shea or harassed Shea.

35. On or about June 21, 2023, Plaintiff attended a virtual meeting with a third-party investigator for Shea's complaint against her but would not appear on video, which was not required by any of the emails Plaintiff received from the investigator prior to the meeting or by Drexel's policies.

36. The third-party investigator would not continue with the meeting unless Plaintiff

came on video.  As such, the meeting ended.

37. On June 23, 2023, Plaintiff was taken out of work by her doctor due to work-related stress including, but not limited to, panic attacks and generalized anxiety.

38. During this time, Plaintiff attended individual and group therapy sessions and was put on medication for generalized anxiety and depression, *inter alia*.  Plaintiff had not taken medication for anxiety, depression or panic attacks since 2018, which was before her employment at Drexel.

39. Plaintiff initiated a lawsuit against Drexel on June 27, 2023 for race/color and gender discrimination, retaliation and hostile work environment in federal court ("First Lawsuit") under Section 1981, *as amended*, which is docketed as Case No. 2:23-cv-02451-JDW.

40. Plaintiff returned to work at Drexel on August 3, 2023 with accommodation for her to take off 2 hours a day for 4 days a week to continue to attend group therapy.  This accommodation continued until September 2023.

41. Also, upon returning to work in August 2023, Plaintiff continued to attend individual therapy with her therapist for one hour a week.

42. Since filing her first lawsuit against Drexel, Plaintiff continued to be employed by Drexel as its VP, University Chief Compliance and Privacy Officer under Bowman as her administrative manager, *inter alia*.

43. Bowman as Plaintiff's administrative manager held biweekly, telephonic one-on-one meetings with Plaintiff to update Bowman on Plaintiff's office – Compliance, Policy and Privacy Services Office - workload, progress, and any problems/issues.

44. Further, as part of her first lawsuit, Plaintiff deposed Bowman on January 31, 2024 and subpoenaed documents via personal service at Bowman's home on or about February 14,

2024.

45. As part of her work as Chief Compliance and Privacy Officer, Plaintiff and her team were responsible for monitoring and investigating inquiries and complaints that come in through Drexel's Compliance Hotline and through direct reporting, *inter alia*.

46. On February 13, 2024, Plaintiff received a direct report of a compliance inquiry against Drexel from a student, who self-identified as a disabled veteran.

47. As part of her investigation, Plaintiff communicated with the student and relevant professional staff members to address the student's concerns. Plaintiff also reviewed Drexel's ODR-1 Policy – Reasonable Accommodation for Individuals with Disabilities.

48. When discussing the student inquiry with a subordinate junior member of the Office of General Counsel ("OGC"), Nicole Sugarman ("Sugarman"), Sugarman challenged Plaintiff about Plaintiff's work as the Chief Compliance Officer.

49. Specifically, Sugarman questioned whether Plaintiff could raise concerns about disability discrimination by Drexel against the student based on the student's compliance inquiry.

50. Subsequently, Sugarman went to Bowman complaining about Plaintiff's role as Chief Compliance Officer, *inter alia*.

51. On February 26, 2024, Bowman communicated with Plaintiff that the previously scheduled one-on-one telephonic meeting for February 27, 2024 would be a Zoom virtual meeting with Sugarman in attendance because "we must align on expectations regarding your role" related to the student reporting matter.

52. Similar to Shea's communications with Bowman, Williams and the Audit Committee regarding Plaintiff's job title and role as administrative manager of Shea and IA, Plaintiff once

again felt attacked and under unnecessary pressure and scrutiny by a subordinate, junior professional staff member, this time Sugarman.

53. Since one-on-one meetings had routinely been via telephone and without others present, Plaintiff expressed to Bowman that she (Plaintiff) did not feel comfortable with Sugarman's presence during Plaintiff's one-on-one meeting or with the requirement of Zoom appearance.

54. Plaintiff also requested Bowman meet with her first alone to afford Plaintiff the opportunity to discuss the student reporting matter, Compliance Officer's autonomy and provide Bowman with factual background information.  Bowman refused to do so.

55. Despite Bowman's refusal to accommodate Plaintiff's request to meet first with Bowman alone and her discomfort with the Zoom meeting, Plaintiff appeared on video on February 27, 2024 with Sugarman and Bowman.

56. During the group portion of Plaintiff's one-on-one meeting, Plaintiff expressed twice that she was not comfortable with the meeting.

57. Sugarman was unable to state the facts related to the student reporting issue that was the basis of Zoom meeting.

58. Once Sugarman left the meeting, Plaintiff and Bowman continued with Plaintiff's scheduled one-on-one meeting during which time Bowman asked Plaintiff directly about facts related the student reporting inquiry.

59. Despite Plaintiff and Bowman having other communications regarding the content of the February 27, 2024 Zoom meeting, Bowman for the first time on March 4, 2024 accused Plaintiff of insubordination for "not participating" in the Zoom meeting, *inter alia*.

60. On February 27, 2024, Drexel and Bowman knew and had reason to know Plaintiff

suffered from stress, anxiety and other disabilities related to her work environment.

61. On February 27, 2024, Drexel and Bowman knew and had reason to know of Plaintiff's prior leaves of absence related stress including, but not limited to, Shea's and IA team leadership's behaviors, reports to Bowman, Williams and the Audit Committee, and treatment of Plaintiff.

62. Despite their actual knowledge, Drexel and Bowman did not make a reasonable accommodation for Plaintiff to meet with Bowman separately first before changing Plaintiff's one-on-one meeting to a group Zoom meeting based on conversations outside of Plaintiff's presence or knowledge that allowed Sugarman's attendance.

63. During the March 5, 2024 Audit Committee meeting, executive session, Plaintiff complained she felt targeted, discriminated against, and retaliated against. Though then-President John Fry ("Fry"), Caucasian/white, and Bowman were present, no one responded to Plaintiff's statements.

64. Instead, on March 7, 2024, Bowman/Drexel placed Plaintiff on paid administrative leave for "insubordination."

65. On May 13, 2024, Drexel terminated Complainant's employment based on an alleged "third-party investigation" of Bowman's complaint of "insubordination" against Plaintiff for not participating in the February 27 meeting and "violation" of Drexel's Code of Conduct.

A true and correct copy of the May 13, 2024 termination letter is attached as Exhibit "B".

66. Drexel failed to identify any section of its Code of Conduct that Plaintiff allegedly violated and failed to interview Plaintiff at any time during its alleged "investigation" of any complaints.

**COUNT I**
**ADA and PHRA**

**Failure to Make Reasonable Accommodation**                    **Disability – Discrimination**

67. Plaintiff re-avers and incorporates by reference the averments in all paragraphs, *supra.*

68. As Vice President, University Chief Compliance and Privacy Officer at Drexel and in her prior position of Vice President, Chief Compliance, Privacy and Internal Audit Officer, Plaintiff has received annual performance evaluations that "fully achieved expected results" from Bowman since Plaintiff's employment began at Drexel on July 8, 2019.

69. The Office of Compliance, Policy and Privacy Services ("OCPPS") as well as its predecessor office OCPIA under Plaintiff's leadership continued to perform superbly with limited financial and staffing resources and tools.

70. In fact, at the general Audit Committee meeting held on March 5, 2024, Plaintiff received accolades from IA for her office's thorough handling of issues/problems such that IA had no current issues to discuss regarding her office.

71. Plaintiff has a record of impairments as she was taken out of work two times by either her therapist or doctor for stress, PTSD, anxiety and/or depression during her employment with Drexel, both of which are documented.

72. Plaintiff is disabled based on actual disabilities, i.e., she has PTSD, anxiety and depression that is documented, and of which Drexel has actual knowledge.

73. Plaintiff is a qualified individual who can perform the essential functions of her position of Vice President, University Chief Compliance and Privacy Officer at Drexel with or without reasonable accommodations as she continues to do so and to excel in her leadership of OCPIA and OCPPS.

74. Bowman denied Plaintiff reasonable accommodations of meeting with Bowman alone first before the group meeting with Sugarman and meeting via telephone instead of Zoom video conference on February 27.

75. Drexel denied Plaintiff reasonable accommodations of interviewing her during the alleged "third-party investigation" of Bowman's complaint of insubordination and violation of code of Conduct against Plaintiff, *inter alia.*

76. Bowman and Drexel did not and cannot establish that providing Plaintiff with an individual meeting with Bowman alone first and a telephonic group meeting imposed an undue hardship on Drexel's business operations.

77. Bowman and Drexel did not and cannot establish that interviewing Plaintiff for the third-party investigation imposed an undue hardship on Drexel's business operations.

78. Further, Bowman and Drexel did not make a good faith effort to assist Plaintiff but rather Bowman simply refused to meet with Plaintiff or change the Zoom meeting back to a telephonic meeting as Plaintiff made requests for both.

79. Bowman and Drexel did not make a good faith effort to interview Plaintiff but rather they simply refused to interview Plaintiff for the allegations against her of "insubordination" and "violation" of Drexel's Code of Conduct and terminated her, *inter alia*.

80. Moreover, Drexel and Bowman could have easily accommodated Plaintiff in both instances since one-on-one meetings were routinely telephonic, Bowman engaged in email exchanges with Plaintiff about the matter, and the time used for email exchanges could have been used instead to meet with Plaintiff.

81. Finally, Drexel and Bowman could have easily accommodated Plaintiff by interviewing her as a party to Bowman's and/or any other complaint, which is part of Drexel's

policies and best business practices.

82. As a result of Drexel's discrimination, Plaintiff suffered injuries including, but not limited to, emotional distress and financial losses.

**WHEREFORE,** Plaintiff respectfully requests this Honorable Court enter judgment in her favor and against Defendant in the form of back pay, front pay, medical expenses and professional treatment, emotional distress, emotional harm, mental anguish, punitive damages, attorney's fees, expert fees, costs and such other relief as this Court deems just and proper.

## COUNT II
## ADA and PHRA

**Disparate Treatment**                              **Disability - Discrimination**

83. Plaintiff re-avers and incorporates by reference the averments in all paragraphs, *supra*.

84. Plaintiff is a disabled person based on actual disabilities, i.e., PTSD, severe anxiety and depression that is documented, and of which Drexel had actual knowledge.

85. Bowman and Drexel knew and had reason to know of Plaintiff's PTSD, severe anxiety and depression diagnoses in June and July 2023 and the events surrounding her June 2023 leave of absence.

86. From August 2023 through September 2023, Drexel and Bowman knew and had reason to know Plaintiff required accommodation, when she returned to work, for 2 hours a day, 4 days a week to continue intensive group therapy.

87. On February 27, 2024, Bowman knew of Plaintiff's anxiety based on the prior external investigator's requirement that Plaintiff appear on video, when Drexel's policies did not require such.

88. Despite her knowledge, on February 27, 2024, Bowman required Plaintiff to appear

on video at Plaintiff's previously scheduled solo telephonic one-on-one meeting, which now

included Sugarman who was not on Bowman's team.

89. Despite her anxiety and twice stating she was not comfortable, Plaintiff appeared on

video but Sugarman, who requested the meeting, did not have necessary information to address

her alleged reasons for wanting the meeting.

90. Instead, Bowman alleged Plaintiff "refused to engage in a work-related discussion

during a scheduled meeting on February 27, 2024." *See* Ex. B, *supra*.

91. Bowman and Drexel terminated Plaintiff on May 13, 2024 alleging "your refusal to

engage in a work-related discussion during a scheduled meeting on February 27, 2024 is deemed

insubordination," *inter alia.  Id.*

92. As a result of Drexel's discrimination, Plaintiff suffered injuries including, but not

limited to, emotional distress and financial losses.

**WHEREFORE,** Plaintiff respectfully requests this Honorable Court enter judgment in her

favor and against Defendant in the form of back pay, front pay, medical expenses and

professional treatment, emotional distress, emotional harm, mental anguish, punitive damages,

attorney's fees, expert fees, costs and such other relief as this Court deems just and proper.

**COUNT III**
**ADA and PHRA**

**Retaliation**                                                      **Disability - Discrimination**

93. Plaintiff re-avers and incorporates by reference the averments in all paragraphs,

*supra*.

94. Plaintiff participated in protected activities when she: (a) complained she felt

targeted, discriminated and retaliated against in March 5, 2024 Audit Committee meeting,

executive session; (b) requested a meeting first alone with Bowman to discuss the student

reporting matter before the February 27, 2024 one-on-one turned group meeting as a reasonable accommodation; (c) requested the one-on-one turned group meeting be by telephone and not by Zoom video conferencing as a reasonable accommodation; (d) inquired about disability discrimination based on Drexel's handling of student's compliance inquiry based on its ODR-1 policy; (e) took the deposition of Bowman on January 31, 2024 in furtherance of Plaintiff's first lawsuit; and (f) personally served a subpoena *duce tecum* on Bowman on February 14, 2024 in furtherance of Plaintiff's first lawsuit.

95. Drexel took adverse actions against Plaintiff when Bowman failed, in good faith, to assist Plaintiff by having a meeting with Plaintiff alone first before the February 27 group meeting and by requiring the routinely telephonic one-on-one meeting to be a Zoom videoconference group meeting.

96. Drexel took adverse actions against Plaintiff when it placed her on administrative leave on March 7, 2024.

97. Drexel took adverse actions against Plaintiff when it failed to interview her as a party to Bowman's complaint of "insubordination" and "violation" of its Code of Conduct, *inter alia*.

98. Drexel took adverse actions against Plaintiff when it terminated Plaintiff's employment on May 13, 2024.

99. Although Plaintiff's February 27 one-on-one meeting with Bowman was scheduled on December 21, 2023, Bowman at the last minute, on February 26, 2024, required a group Zoom meeting without a good faith reason to refuse reasonable accommodations as noted *supra*.

100. Thus, the time between Plaintiff's protected activities, i.e., February 26 request for reasonable accommodation and Drexel's failure to provide reasonable accommodation (February 27) was less than 24 hours.

101.    The time between Plaintiff's protected activities, i.e., March 5 complaint during Audit Committee, executive session, and Drexel's placing Plaintiff on administrative leave (March 7) was 2 days.

102.    The time between Plaintiff's protected activities, i.e., March 5 complaint during Audit Committee, executive session, and Drexel's termination of Plaintiff's employment on May 13 was approximately 2 months.

103.    The time between Plaintiff's protected activities, i.e., February 13 receipt of student direct report and Plaintiff's inquiry about possible disability discrimination based on Drexel's ODR-1 policy leading to group meeting on February 27 was less than 1 month.

104.    The time between Plaintiff's protected activities, i.e., personal service of subpoena *duces tecum* on Bowman (February 14), and Bowman's/Drexel's failure to afford Plaintiff reasonable accommodation (February 26) was 12 days.

105.    The time between Bowman's deposition during Plaintiff's first lawsuit (January 31) and Bowman's/Drexel's failure to afford Plaintiff reasonable accommodation (February 26) was 26 days.

106.    Bowman, on March 4, for the first time since Plaintiff's employment at Drexel accused Plaintiff of insubordination, a disciplinary charge, for not participating in the February 27 group meeting and violation of its Code of Conduct, which are not true and are an attempt to mask Drexel's failure to exercise good faith in assisting and accommodating Plaintiff's disability.

107.    As a result of Drexel's retaliation, Plaintiff suffered injuries including, but not limited to, emotional distress and financial losses.

**WHEREFORE,** Plaintiff respectfully requests this Honorable Court enter judgment in her

favor and against Defendant in the form of back pay, front pay, medical expenses and professional treatment, emotional distress, emotional harm, mental anguish, punitive damages, attorney's fees, expert fees, costs and such other relief as this Court deems just and proper.

## COUNT IV
### Title VII, Section 1981 and PHRA

**Disparate Treatment**                                    **Race/Color - Discrimination**

108.    Plaintiff re-avers and incorporates by reference the averments in all paragraphs, *supra*.

109.    Plaintiff was qualified for the position of VP CPIA and Chief Compliance and Privacy Officer.

110.    Plaintiff initiated a complaint of insubordination in July 2022 against Shea as his administrative manager, *inter alia.*

111.    Drexel never investigated or acted on her complaint of insubordination against Shea even when she gave Shea a performance evaluation in October 2022 that noted Shea's insubordination, *inter alia.*

112.    In fact, based on Shea's complaints about his 2022 performance evaluation, Drexel "corrected" the performance evaluation resulting in Shea receiving a merit increase.

113.    Bowman initiated a complaint of insubordination in March 2024 against Plaintiff as Plaintiff's administrative manager.

114.    Drexel investigated and acted on Bowman's complaint of insubordination against Plaintiff that resulted in Plaintiff's termination in May 2024.

115.    Further, Drexel did not include Plaintiff in the investigation including, but not limited to, did not interview Plaintiff as party during any third-party investigation.

116.    Based on Drexel's discrimination, Plaintiff suffered injuries including, but not

limited to, emotional distress and financial losses.

   **WHEREFORE,** Plaintiff respectfully requests this Honorable Court enter judgment in her

favor and against Defendant in the form of back pay, front pay, medical expenses and

professional treatment, emotional distress, emotional harm, mental anguish, punitive damages,

attorney's fees, expert fees, costs and such other relief as this Court deems just and proper.

### COUNT V
### Title VII, Section 1981 and PHRA

**Retaliation**                                                      **Race/Color - Discrimination**

   117.    Plaintiff re-avers and incorporates by reference the averments in all paragraphs,

*supra*.

   118.    On March 4, 2024, Bowman alleged Plaintiff was insubordinate to her (Bowman)

related to the February 27 Zoom one-on-one meeting attended by Sugarman.

   119.    Plaintiff participated in protected activity when she complaint she felt targeted,

discriminated against, and retaliated against during the March 5, 2024 Audit Committee meeting,

executive session.

   120.    In attendance during that executive session were then-President John Fry,

Bowman's boss; Audit Committee members; and Drexel's General Counsel Michael Exler

("Exler"), Caucasian/white, amongst others.

   121.    On March 7, based on Bowman's complaint against Plaintiff of insubordination

and of non-specified violations of Drexel's Code of Conduct, Drexel placed Plaintiff on

administrative leave with pay.

   122.    On May 13, after a clandestine third-party investigation of Bowman's complaints

of insubordination and violation of non-specified sections of Drexel's Code of Conduct, *inter*

*alia*, Drexel terminated Plaintiff.  Plaintiff was not interviewed and had no knowledge of any

investigation(s) against her.

      123.    Based on Drexel's retaliation, Plaintiff suffered injuries including, but not limited to, emotional distress and financial losses.

      **WHEREFORE,** Plaintiff respectfully requests this Honorable Court enter judgment in her favor and against Defendant in the form of back pay, front pay, medical expenses and professional treatment, emotional distress, emotional harm, mental anguish, punitive damages, attorney's fees, expert fees, costs and such other relief as this Court deems just and proper.

                                                    **Respectfully submitted**:

                                                  LAW OFFICE OF KARIN M. GUNTER

Date: September 22, 2025               /s/ Karin M. Gunter
                                                  Karin M. Gunter, Esquire
                                                  PA Supreme Court Id: 79852
                                                    85 Old Cedarbrook Road
                                                    Wyncote, PA 19095
                                                  (215) 548-9992
                                                  Email: Kgunterlaw2@gmail.com

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

Philadelphia District Office
801 Market St, Suite 1000
Philadelphia, PA 19107
(267) 589-9700
Website: www.eeoc.gov

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST) AND NOTICE OF RIGHTS

(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 07/10/2025

**To:** Ms. Kim P. Gunter
519 Ramsey Road
Oreland, PA 19075

Charge No: 530-2024-08390

EEOC Representative:        Legal Unit
                           (267) 589-9707

---

### NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST) OF CHARGE

The EEOC has granted your request for a Notice of Right to Sue, and more than 180 days have passed since the filing of this charge.

The EEOC is terminating its processing of this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice that the EEOC has dismissed your charge and has issued you notice of your right to sue the respondent(s) on this charge. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of EEOC's official notice of dismissal.** You should keep a record of the date you received the EEOC's official notice of dismissal. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 530-2024-08390

On behalf of the Commission,

Digitally Signed By: Karen McDonough
07/10/2025

Karen McDonough
Deputy District Director

EXHIBIT "A"



DREXEL UNIVERSITY
Department of
Human Resources

May 13, 2024

Dear Kim,

This letter is to inform you that your employment with Drexel University as Vice President and Chief Compliance and Privacy Officer is terminated effective immediately.

Upon thorough investigation by a third-party of the allegations and circumstances outlined, it has been determined that your actions violated the University's Code of Conduct.  Specifically, your refusal to engage in a work-related discussion during a scheduled meeting on February 27, 2024, is deemed insubordination. Furthermore, your behavior during the Executive Session of the Audit Committee on March 5, 2024, particularly your decision to raise allegations inappropriately, demonstrated poor professional judgment and leadership on your part. In addition, the investigation found no evidence to support your claims of harassment, discrimination, or retaliation by Helen Bowman. Instead, it was concluded that your allegations were made in bad faith, further breaching the University's standards of conduct, including EIC-1. These actions collectively are inconsistent with the University's expectations for employees holding senior-level leadership positions in the University.

Please return all University property and materials in your possession to Jen Gallagher (jlg452@drexel.edu) by close of business on Friday May 17, 2024.  You will receive a separate communication regarding the terms of your separation, including any benefits and entitlements.

We appreciate your past contributions during your tenure and wish you professional success.

Sincerely,

Jennifer Gallagher
Executive Director, People Operations and Talent Management
Human Resources

Cc: Personnel File

EXHIBIT "B"

VERIFICATION

I, KIM P. GUNTER, am Plaintiff in the foregoing pleading. I hereby verify that the

averments set forth in the herein Complaint are true and correct, to the best of my knowledge,

information, and belief. I understand that false statements herein are made subject to the

penalties of 28 U.S.C. section 1746 unsworn declarations under penalty of perjury.


Dated: _Sept. 22_ , 2025                    _____
                                            Kim P. Guner